UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

FILED

SEP 11 2012

CLERK, US DISTRICT COURT
NORFOLK, VA

NICOLE D. EVANS,

       Plaintiff,

v.                                        Case No.: 2:11cv306

LARCHMONT BAPTIST CHURCH
INFANT CARE CENTER, INC.

       Defendant.

<u>OPINION AND ORDER</u>

Before the Court is Defendant Larchmont Baptist Church Infant Care Center, Inc.'s (the "ICC") Motion for Summary Judgment, filed on May 1, 2012.[1] ECF No. 38. Defendant argues that it is entitled to summary judgment on Plaintiff's employment discrimination claims because the ICC did not meet the federal statutory definition of "employer" under Title VII of the Civil Rights Act of 1964 ("Title VII") or the Americans with Disabilities Act ("ADA") at the time the alleged discrimination occurred.

Plaintiff Nicole Evans, who is proceeding <u>pro se</u>, timely filed a Memorandum in Opposition and supporting exhibits on May 18, 2012. ECF No. 41. Defendant filed a Rebuttal Brief on May 22, 2012. On July 10, 2012, the Court ordered supplemental briefing on the number of employees that the ICC employed. ECF No. 45. On August 21, 2012, the Court granted Defendant an extension until August 27,

---

[1] Defendant attached a <u>Roseboro</u> Notice to the motion.

-1-

2012, to file evidence or supplemental briefing in support of the instant motion and granted Plaintiff until September 4, 2012, to respond or further supplement her briefing. ECF No. 54. The parties have complied with the Court's supplemental briefing orders. Accordingly, Defendant's Motion for Summary Judgment is fully briefed and ready for disposition. For the reasons set forth herein, Defendant's motion is DENIED.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

For the purpose of the instant motion, the following facts are not in dispute. The ICC is a former day care center. Plaintiff was employed as the Lead Teacher in the "Infant Room" at the ICC from September 2006 until August 2009. Am. Compl. 2-3, ECF No. 33 at 2-3.

In July 2009, the ICC discharged one of Plaintiff's coworkers for allegedly sleeping on the job. Id. at 2. The coworker subsequently filed a disability discrimination claim with the U.S. Equal Employment Opportunity Commission ("EEOC"). ECF No. 33 attach. 3. On July 24 and July 29, 2009, in connection with an investigation into the coworker's claims, the ICC's director, Kimberly Carmi, asked Plaintiff to write a statement that she had witnessed the coworker sleeping on the job. Id. at 3. Ms. Carmi sought similar statements from other ICC staff members. Id. at 3, attach. 7. Plaintiff refused to write a statement. Id. at 3. On July 31, 2009, Ms. Carmi distributed a survey regarding staff's

-2-

awareness about the ICC's policy against sleeping on the job. Id. attach. 9. Plaintiff did not complete the survey. Id. at 3. On August 3, 2009, Plaintiff wrote a letter to the EEOC stating that the coworker had been wrongfully terminated and that there had been no formal discussions regarding sleeping on the job. Id. attach. 4. On August 7, 2009, Ms. Carmi reassigned Plaintiff to the position of Assistant Teacher in the Toddler II Room. Id. at 3, attach. 7.

Although the ICC did not reduce Plaintiff's pay rate as a consequence of the reassignment, Plaintiff alleges that her hours were reduced from forty hours per week to thirty-two less hours.[2] Id. at 3. She also began receiving written reprimands, which, she alleges, she had not received prior to her reassignment. Id. at 3, attach. 8, 10, 11.

On August 17, 2009, Plaintiff filed a retaliation charge with the EEOC. Id. attach. 13. Plaintiff was later transferred to the position of Lead Teacher in the "Transition Room."[3] Pl.'s Opp. Mem. to Def.'s Sum. J. Mot. Ex. E, ECF No. 41 attach. 8.  On June 3, 2010, the ICC terminated Plaintiff. Am. Compl. at 4. Plaintiff alleges that the termination was the ICC's final act of retaliation

---

[2] Payroll records from the relevant time period reveal that the amount of Plaintiff's weekly pay was reduced subsequent to her reassignment. Def.'s Sum. J. Mot. Ex. 1, ECF No. 38 attach. 1.
[3] There is evidence that on September 28, 2009, after learning of Plaintiff's EEOC charge, the ICC director offered to transfer Plaintiff to the position of Lead Teacher in the "Toddler I" room, where she would have three assistants. ECF No. 33 attach. 11. Plaintiff reportedly declined the offer. Id.

related to Plaintiff's conduct surrounding the termination of her coworker in 2009. On July 15, 2010, Plaintiff filed a second EEOC charge alleging that she had been subjected to a hostile work environment and discharged in retaliation for participating in protected activity under the ADA. Id. attach. 15.

On August 26, 2010, the EEOC issued a Determination, finding that the ICC was an employer within the meaning of the ADA and that

> [t]he evidence reveals there is sufficient cause to
> believe the Respondent retaliated against the Charging
> Party by initially demoting her from Lead Teacher in
> Infants to Assistant in Toddlers and then reassigning her
> to the Transition Room. The evidence also reveals that
> the Charging Party was further retaliated against in
> being issued a Record of Discussion which had not been
> issued to anyone previously. This action is in violation
> of the Americans with Disabilities Act of 1990, as
> amended, Section 503.

Pl.'s Opp. Mem. to Def.'s Sum. J. Mot. Ex. 4, ECF No. 41 attach. 4. The EEOC attached a proposed Conciliation Agreement to its Determination. ECF No. 33 attach. 16. The ICC declined to accept the terms of the Conciliation Agreement, and the EEOC issued Plaintiff a Notice of Right to Sue on March 18, 2011. ECF No. 33 attach. 18. Plaintiff timely filed a Complaint in this Court on June 9, 2011. ECF No. 3.

Plaintiff's one-page complaint alleged retaliation under the ADA and Title VII of the Civil Rights Act of 1964. In addition to the ICC, it named Kimberly Carmi and Laura Reed, Chair of the ICC's Board of Directors, as individual defendants. On January 17, 2012,

-4-

the ICC and Ms. Reed filed a motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction and failure to state a claim. ECF No. 23. On January 19, 2012, Ms. Carmi filed a motion to dismiss Plaintiff's complaint on the same grounds argued in the ICC and Ms. Reed's motion. ECF No. 25.

On February 23, 2012, the Court, sua sponte, directed Plaintiff to show cause why defendants Carmi and Reed should not be dismissed from the case as improper defendants. ECF No. 29.

On February 29, 2012, the Court granted the ICC's motion to dismiss Plaintiff's complaint for failure to state a claim and granted Plaintiff leave to file an amended complaint.[4] ECF No. 30. Plaintiff filed a response to the Show Cause Order on March 2, 2012. ECF No. 31. She filed an Amended Complaint and exhibits on March 19, 2012. ECF No. 33. On March 30, 2012, the ICC filed its Answer to Plaintiff's Amended Complaint. ECF No. 36.

On March 21, 2012, the Court Ordered that Defendants Carmi and Reed be dismissed from the case because Plaintiff had failed to

---

[4] Defendant's motion to dismiss for lack of subject matter jurisdiction was predicated on the fact that the ICC was not an employer within the definition of the ADA or Title VII because it never employed fifteen or more employees during the times relevant to this case. In its February 29, 2012 Order, the Court explained that the Acts' employer numerosity requirement was an element of Plaintiff's claim rather than a jurisdictional prerequisite. See Arbaugh v. Y & H Corp., 546 U.S. 500, 515 (2006). Accordingly, the Court denied Plaintiff's motion to dismiss for lack of subject matter jurisdiction.

-5-

demonstrate that they were proper defendants under the ADA or Title VII. ECF No. 35.

On April 30, 2012, the Court held a status conference at which Plaintiff appeared pro se and Gregory Klein, Esq., appeared on behalf of the ICC. ECF No. 37. At the status conference, Mr. Klein represented that the ICC had dissolved as a corporation and that there was no insurance policy to cover Plaintiff's claims. Mr. Klein subsequently submitted a Certificate of Fact from the Virginia State Corporation Commission, which states that the Commission terminated the ICC's corporate existence on June 30, 2012, for failure to maintain a registered agent. ECF No. 50. On May 1, 2012, the ICC filed the instant motion for summary judgment. ECF No. 38. The motion is now fully briefed and neither party has requested a hearing on the matter. Accordingly, it is ready for disposition.

## II.   SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." Id.

-6-

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion" and demonstrating the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When, as here, the nonmoving party bears the burden of persuasion at trial, the moving party may discharge its initial burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case" or by producing evidence that negates essential elements of the nonmoving party's claims. Id. at 323, 325. If the movant satisfies this initial burden, the nonmoving party is required "to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. at 325.

In determining whether a genuine dispute of material fact exists, a "court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence." Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004). In conducting this analysis, a court need only consider materials cited by the parties, but it may consider any record evidence, including that which is not cited. Fed. R .Civ. P. 56(c)(3), advisory notes 2010. In the instant case, the Court is mindful of Plaintiff's pro se status and that documents filed pro

-7-

se are "to be liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007); Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) ("The Fourth Circuit takes the position that its district courts must be especially solicitous of civil rights plaintiffs. This solicitude for a civil rights plaintiff with counsel must be heightened when a civil rights plaintiff appears pro se."). Accordingly, the Court has conducted an independent review of evidence filed in support of both parties' positions.

### III. DISCUSSION AND ANALYSIS

The ADA and Title VII define an employer as "a person engaged in an industry affecting commerce who has fifteen (15) or more employees for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year. . . ." 42 U.S.C. §§ 2000e(b), 12111(5). The fifteen employee numerosity requirement is a threshold element of any plaintiff's retaliation claim. See Arbaugh v. Y & H Corp., 546 U.S. 500, 515 (2006); Coles v. Deltaville Boatyard, LLC, Civil No. 3:10cv491, 2011 WL 666050, at *7 (E.D. Va. Feb. 14, 2011) (citing Arbaugh). In determining the number of individuals a defendant employed on a given day, courts must examine the number of individuals with whom the defendant maintained an employer/employee relationship rather than the number of individuals who worked or were compensated on that day. See Walters v. Metro. Educ. Entr., Inc., 519 U.S. 202, 206 (1997).

-8-

Defendant argues that it is entitled to summary judgment because it never employed fifteen employees for the requisite period during the years relevant to the instant dispute.

Plaintiff alleges that she was demoted in 2009 and terminated in 2010 for engaging in protected activity in 2009. Accordingly, the question before the Court is whether there is a genuine dispute over whether the ICC met the numerosity requirement in 2008, the year preceding Plaintiff's reassignment, 2009, the year of her reassignment, or 2010, the year of her termination. 42 U.S.C. §§ 2000e(b), 12111(5); see White v. CMA Constr. Co., 947 F. Supp. 231, 233 (E.D. Va. 1996) ("'Current calendar year'" is defined as the year in which the alleged harassment occurred."); see also Hernandez-Miranda v. Empresas Diaz Masso, Inc., 651 F.3d 167, 175 (1st Cir. 2011); Smith v. Castaways Family Diner, 453 F.3d 971, 973-974 (7th Cir. 2006).

## A.   Defendant Has Met Its Initial Burden on Summary Judgment.

In support of its position, Defendant has submitted printouts of the ICC's purported weekly payroll transactions ("the ledger") from January 2008 through December 2009.[5] Def.'s Sum. J. Mot. Supp. Mem. Ex. 1, ECF No. 39 attach. 1. For each week, the ledger lists the names of paid employees and the amount they were paid. If an individual did not work in a given week, his or her name is absent

---

[5] Although not fatal to its motion, Defendant has not submitted an affidavit or declaration attesting to the source or accuracy of the printouts.

-9-

from the list for that week. The number of employees paid in a given week has been totaled and is hand-written to the right of the employees' names. Id. In 2008, the total number of employees paid in any given week never exceeded fourteen. Id. In 2009, the totals indicate four weeks in which the ICC paid fifteen or more employees. Id. There is no ledger data for the week of April 19, 2009.

Defendant has also submitted an Affidavit from Kimberly Carmi, former director of the ICC. Kimberly Carmi Aff., ECF No. 55. It states that she was responsible for managing the personnel the ICC employed and that in 2009 and 2010, the ICC "never employed more than fourteen individuals on a weekly basis for a period of time greater than nineteen weeks." Id. Ultimately, Defendant argues that Plaintiff cannot produce evidence sufficient to establish that the ICC ever met the fifteen-employee requirement. Def.'s Resp. to Ct. Order, ECF No. 46. Defendant's productions and argument satisfies its initial burden on summary judgment.

## B. Plaintiff's Evidence Establishes a Genuine Dispute of Material Fact.

Plaintiff contends, however, that the ICC satisfied the numerosity requirement. In her opposition memorandum, Plaintiff primarily attacks the veracity of the ledger and questions its use as a means for determining the number of individuals Defendant employed in a given week. ECF No. 41 at 6. She has attached numerous exhibits in support of her position to her opposition

-10-

memorandum. Pursuant to this Court's February 29, 2012 Order, she also attached documentation in support of her claims to her amended complaint.

According to the evidence that Plaintiff has submitted, the EEOC identified seventeen weeks during 2009 in which the ICC employed fifteen employees. ECF No. 41 attach. 5. However, the EEOC interviewed an employee during an on-site investigation into Plaintiff's claims in November 2009, who was apparently not listed on the ledger. Id.

A document entitled "State Tax Summary" and dated August 2009 lists sixteen employees, including an "Elizabeth Sampson." ECF No. 41 attach 3, at 4. Plaintiff has submitted copies of time cards from a "Liz Simpson" that date from May 26, 2009, to July 31, 2009. ECF No. 41 attach. 11. Neither an Elizabeth Sampson nor a Liz Simpson appears on the ledger; however it is reasonable to infer from the documentation presented that, whether her name is Sampson or Simpson, she was an ICC employee. Defendant makes no attempt to rebut this inference in its Reply brief. Adding her to the employee pool would produce an additional five weeks in 2009 in which the ICC employed fifteen employees.

As Plaintiff points out, Ms. Carmi's name is absent from the ledger from the week of April 14, 2009, through the week of May 31, 2009; ECF No. 39 attach. 1 at 30-31; however Ms. Carmi represents in her affidavit that she was employed with the ICC in 2009 and

-11-

attests to having direct knowledge of the number of employees that the ICC employed throughout that year. From these facts, the Court can reasonably infer that the ICC employed Ms. Carmi during her absence even though she was not being paid. See Walters, 519 U.S. at 208.

The same can be said of numerous other individuals who are absent from the ledger during various weeks in 2009 but who appear regularly for periods before and after their absences. For example, Carmen Navarrete is listed on the ledger as early as the week of April 27, 2008. ECF No. 39 attach. 1. She is absent beginning the week of April 5, 2009, but she reappears as Carmen Sawko on the week of July 19, 2009.[6] She then remains on the ledger through the week of January 3, 2010, when the records Defendant has submitted end. Id. An Organizational Chart dated October 23, 2009, lists Ms. Navarrete-Sawko's date of hire as April 2009. ECF No. 41 attach. 8. If she retained an employment relationship with the ICC during her absence, adding her and Ms. Carmi to the ledger during the weeks of their respective absences produces an additional eight weeks in which the ICC employed fifteen or more employees.

The payroll ledger lists fourteen and twelve names for the weeks of August 9 and 15, 2009, respectively. Sharon Hand's name is absent from the ledger beginning July 19, 2009, but it reappears on

---

[6] Documents that Plaintiff has submitted indicate that Ms. Navarrete changed her name from Carmen Navarrete to Carmen Sawko during her absence. ECF No. 41 attach. 8, 19.

August 16, 2009, making it reasonable to conclude that Ms. Hand was still an ICC employee the week of August 2, 2009, even though her status as such is not reflected in the following week's payroll transactions. Veida Evans and Shirley and Bobby Dailey are all absent from the ledger the week of August 15, 2009, but all three appear regularly on the ledger in preceding and subsequent weeks. ECF No. 39 attach. 1 at 33-35. Adding these individuals to the ICC's payroll during their respective absences produces an additional two weeks in which the ICC employed fifteen employees.

Plaintiff has also submitted an affidavit from Linda Turnage, in which Ms. Turnage attests that she was employed by the ICC from July 1999 through January 2011. ECF No. 33 attach. 12. The organizational chart that Plaintiff submitted lists Ms. Turnage as the Lead Teacher for preschoolers. Linda Turnage Aff., ECF No. 41 attach. 8. Ms. Turnage attests that, to the best of her knowledge, the ICC "has always employed fifteen (15) to nineteen (19) employees due to the Staff to Children Ratio in each classroom." ECF No. 33 attach. 12.

Although a cursory review of the ledger suggests that the ICC failed to meet the numerosity requirement in 2008 or 2009, whether an employee worked or was compensated during a given week is not dispositive of whether the defendant maintained an employment relationship with that individual. See Walters, 519 U.S. at 206. Viewing the record evidence in the light most favorable to

-13-

Plaintiff, it seems apparent that the ledger does not accurately depict the number of individuals with whom the ICC had an employment relationship during any given week in 2008 and 2009. Moreover, on its own review of the ledger and drawing all inferences in favor of Plaintiff, the Court is able to identify at least nineteen weeks in 2009 in which the ICC may have employed fifteen or more employees. Indeed, nineteen is not twenty, but it is far more than the four weeks that Defendant has proffered. Moreover, the week of April 19, 2009 is missing from the ledger altogether. Although the Court is unable to conclude from the ledger that the ICC met the numerosity requirement in 2009, it is similarly unable to conclude that the ICC did not meet the numerosity requirement that year.

Finally, there is the issue of competing affidavits. Defendant has submitted Ms. Carmi's affidavit, which states that the ICC never employed more than fourteen individuals for more than nineteen weeks in 2009 or 2010. Ms. Turnage's affidavit, on the other hand, states that the ICC always employed at least fifteen employees during the years relevant to this case. Both women were employees of the ICC and claim knowledge of the number of individuals the ICC employed during the relevant period. Only one of their accounts can be correct; however, making credibility determinations is a task for trial not summary judgment. Summerlin v. Edgar, 809 F.2d 1034, 1039 (4th Cir. 1987).

-14-

Accordingly, based on the record before it, the Court is unable to conclude, as a matter of law, that Defendant was not an employer within the meaning of the ADA and Title VII during the years relevant to this suit. Rather, the parties' proffered evidence creates a genuine dispute of fact over whether Defendant employed at least fifteen employees for twenty weeks during 2008, 2009, or 2010. Accordingly, the Court cannot conclude that Defendant is entitled to summary judgment.

### IV.   CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment, ECF No. 38, is DENIED. An amended scheduling order setting this matter for trial, among other things, will be forthcoming.

The Clerk shall promptly mail a copy of this Order to Plaintiff.


IT IS SO ORDERED.


UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
September 11 , 2012


-15-