# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Norfolk Division

| | |
|---|---|
| NICOLE D. EVANS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:11-cv-306 |
| ) | |
| LARCHMONT BAPTIST CHURCH ) | |
| INFANT CARE CENTER, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND FINAL ORDER

This case has been referred to the undersigned U.S. Magistrate Judge on the parties' consent pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Before the Court is the *pro se* Plaintiff's, Nicole D. Evans ("Evans"), Motion for Default Judgment, ECF No. 72, and Kim Carmi's ("Carmi") "Request[s] to Cancel the Request of Default Judgment," ECF Nos. 70-71, which, although docketed as Motions, the Court construes, collectively, as a brief in opposition to Evans's Motion. For the following reasons, the Court **GRANTS**, with exceptions, Evans's Motion for Default Judgment and **DENIES as MOOT** Carmi's Motions.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Defendant, Larchmont Baptist Church Infant Care Center, Inc. ("Larchmont"), was a day care center where Evans was employed as a full-time Lead Teacher in the Infant Room beginning September 2006. On July 8, 2009, Larchmont terminated one of Evans's co-workers, who subsequently filed an age and disability discrimination charge with the U.S. Equal Employment Opportunity Commission ("EEOC") on July 16, 2009. The terminated co-worker

also filed a claim for benefits with the Virginia Employment Commission. On July 24 and 29, 2009, in connection with these filings, Carmi, Larchmont's Director, purportedly asked Evans for a written statement confirming she had witnessed the terminated co-worker sleeping on the job. Evans refused. Carmi made the same request to two other co-workers, who complied.

On July 31, 2009, Carmi distributed a survey to the staff concerning Larchmont's policy against sleeping on the job. Evans did not complete the survey and on August 3, 2009, wrote a letter to the EEOC stating her co-worker had been wrongfully terminated, that Carmi "forced/requested [] staff [] to complete a survey ... and submit statements that [her co-worker] was sleeping on the job," and that there had been no formal discussions at Larchmont regarding sleeping on the job. ECF No. 33, attach. 4. On August 7, 2009, Carmi reassigned Evans to the Toddler II Room as an Assistant Teacher,[1] and a memorandum reflecting this reassignment was posted in the workplace on August 12, 2009. Although Evans's wages were not reduced, her weekly work hours decreased from forty to approximately thirty-two hours per week, thereby reducing her weekly pay. She also began receiving written reprimands, which she had not received prior to her reassignment.

Evans filed her first retaliation charge with the EEOC on August 17, 2009, after which she was reassigned as the Lead Teacher in the Transition Room.[2] Nine-and-one-half months later, on June 3, 2010, Larchmont terminated Evans. She alleges her termination was Larchmont's final retaliatory act related to her conduct surrounding her co-worker's termination in 2009. *See id.* at 4 ("For thirteen (13) months Plaintiff was subject to deliberate and malic[ious] retaliation for failure

---

[1] Evans and her co-worker viewed this reassignment as a demotion. ECF No. 33 at 3, attachs. 7, 12.
[2] There is evidence that on September 28, 2009, after learning of Evans's EEOC charge, Carmi offered to reassign her to the Toddler I Room as Lead Teacher, where she would have three assistants. *Id.*, attach. 11. Evans reportedly declined the offer. *Id.*

2

to write a false statement."). Evans filed her second charge with the EEOC on July 15, 2010, claiming she had been subjected to a hostile work environment and discharged in retaliation for participating in protected activity under the Americans with Disabilities Act ("ADA").

The EEOC issued its Determination as to the first charge on August 26, 2010, finding Larchmont to be an employer within the meaning of the ADA and that

> [t]he evidence reveal[ed] there [was] sufficient cause to believe the Respondent retaliated against the Charging Party by initially demoting her from Lead Teacher in Infants to Assistant in Toddlers and then reassigning her to the Transition Room. The evidence also reveal[ed] that the Charging Party was further retaliated against in being issued a Record of Discussion which had not been issued to anyone previously. This action [was] in violation of the American with Disabilities Act of 1990, as amended, Section 503.

ECF No. 41, attach. 4. Attached to the EEOC's Determination was a proposed Conciliation Agreement, which proved unsuccessful. The EEOC then issued Evans a Notice of Right to Sue letter on March 18, 2011, on her first, not second, retaliation charge.[3]

Evans timely filed a one-page Complaint on June 9, 2011, against Larchmont, Carmi, and Laura Reed ("Reed"), Chairwoman of Larchmont's Board of Directors, alleging retaliation under the ADA, 42 U.S.C. § 12203, as amended, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3, as amended. On January 17, 2012, Larchmont and Reed moved to dismiss the Complaint for lack of subject-matter jurisdiction and failing to state a claim. Carmi followed suit on January 19, 2012, by filing the same motion on the same grounds.

On February 23, 2012, the Court, *sua sponte*, directed Evans to show cause why the Complaint should not be dismissed with prejudice as to Carmi and Reed. She responded on March 2, 2012. Before then, on February 29, 2012, the Court granted Larchmont's motion to dismiss the Complaint for failing to state a claim but also granted Evans leave to file an amended

---

[3] This distinction is important for the purpose of the Court's discussion of the merits.

complaint.[4] Evans filed an Amended Complaint with exhibits on March 19, 2012. Two days later, on March 21, 2012, the Court ordered that Carmi and Reed be dismissed from the matter with prejudice because Evans failed to demonstrate that they were proper defendants under the ADA or Title VII. This leaves Larchmont as the sole Defendant. On May 1, 2012, Larchmont moved for summary judgment, which the Court denied on September 11, 2012. A day later, on September 12, 2012, defense counsel moved to withdraw from representation.

On September 28, 2012, the Court granted defense counsel's motion to withdraw after it was made known that Larchmont's corporate existence was terminated by the Virginia State Corporation Commission on June 30, 2012, for failure to maintain a registered agent. It was clear at that time that counsel's continued representation of Larchmont, a defunct corporation with no assets and no personnel, would result in an unreasonable financial burden on counsel, and that the representation had been rendered unreasonably difficult by the client's dissolution. The Court then ordered Evans, on October 11, 2012, to move for default judgment against Larchmont if it did not retain counsel by November 12, 2012. Larchmont failed to retain counsel, the Clerk entered default against it on November 16, 2012, and Evans moved for default judgment on December 5, 2012.

## II. JURISDICTION AND VENUE

"Under [28 U.S.C.] § 626(c), a magistrate judge may conduct any or all proceedings in a civil matter and order the entry of judgment in the case when, one, the parties have consented and two, the district court has specially designated the magistrate judge to exercise such jurisdiction."

---

[4] Larchmont's motion to dismiss for lack of subject-matter jurisdiction was predicated on the fact that it was not an employer within the definition of the ADA or Title VII because it never employed fifteen or more employees during the times relevant to this case. On February 29, 2012, the Court explained in its Order that the Acts' employer numerosity requirement was an element of Evans's claim rather than a jurisdictional prerequisite. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006). Accordingly, the Court denied Larchmont's motion to dismiss for lack of subject-matter jurisdiction.

4

*Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995). "When a magistrate judge enters judgment pursuant to this statute, absence of the appropriate consent and reference or special designation order results in a lack of jurisdiction (or at least fundamental error ...)." *Id.* (citation omitted). Here, the parties have consented to proceed before the undersigned U.S. Magistrate Judge, and the U.S. District Judge assigned to this case referred it to the undersigned in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.

Although Federal Rule of Civil Procedure 55(a) authorizes entry of default judgment against a party when that party "has failed to plead or otherwise defend," the Court must first be able to exercise subject-matter and personal jurisdiction over the defaulting party and establish that venue is proper before it may enter default judgment. In this action, the Court has subject-matter jurisdiction on the basis of federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this case arises under federal law, specifically alleged violations of the ADA. The Court also has general personal jurisdiction over Larchmont because it is a Virginia, but now defunct, corporation, and venue is proper under 28 U.S.C. § 1391(b). Accordingly, it is appropriate for the Court to exercise jurisdiction in this case.

### III. ANALYSIS

#### A. Propriety of Default Judgment

On September 28, 2012, the Court permitted Larchmont's counsel to withdraw from representation, thereby leaving Larchmont, a corporation, without legal counsel. As "[a] corporation is required to have legal representation," *Forth's Foods, Inc. v. Allied Ben. Adm'r, Inc.*, No. 3:07-0670, 2008 WL 88610, at *2 (W.D. Va. Jan. 7, 2008), Larchmont may not participate in any of the activities attendant with defending a lawsuit without counsel. However, Larchmont's ability to retain representation is rendered all the more difficult, perhaps impossible,

5

by the termination of its corporate existence and its lack of assets and personnel. *See* ECF No. 66 at 3. Rather than allow the case to continue indefinitely because of Larchmont's inability to defend this lawsuit, the Court, on October 11, 2012, ordered Larchmont to retain legal counsel by November 12, 2012. In the event it did not do this, the Court also directed Evans to move for default judgment against Larchmont. Evans has done so, and the Clerk entered default judgment against Larchmont on November 16, 2012.

Federal Rule of Civil Procedure 55(a) authorizes entry of default judgment against a party when that party "has failed to plead or otherwise defend." Although Larchmont answered the Amended Complaint such that it has not "failed to plead" under Rule 55(a), because Larchmont has not and cannot retain legal counsel, it cannot "otherwise defend" this case. It is accordingly appropriate for the Court to enter default judgment against Larchmont pursuant to Rule 55. *Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1002 (E.D. Va. 1985) (citation omitted).

> The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established…. As the Supreme Court stated in the "venerable but still definitive case" of *Thomson v. Wooster*: a default judgment may be lawfully entered only "according to what is proper to be decreed upon the statements of the bill, assumed to be true," and not "as of course according to the prayer of the bill." The defendant is not held … to admit conclusions of law. In short, despite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.

*Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) (quoting *Thomson v. Wooster*, 114 U.S. 104, 113 (1885)) (internal quotations and other citations omitted). Therefore, by its default, Larchmont has admitted the well-pleaded factual allegations contained in the Amended Complaint, and the Court may proceed to the merits.

## B. Exhaustion of Administrative Remedies

Before addressing the merits of Evans's retaliation claim under the ADA, though, the Court is obligated to determine whether it has subject-matter jurisdiction to adjudicate her race-based retaliation claim under Title VII. A plaintiff may sue under Title VII only after exhausting her administrative remedies by filing a sworn charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1); *see also Edelman v. Lynchburg Coll.*, 535 U.S. 106, 112 (2002). The charge must be "'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Chacko v. Patuxent Inst.*, 429 F.3d 505, 508 (4th Cir. 2005) (quoting 29 C.F.R. § 1601.12(b)). After doing so, the aggrieved party may initiate a civil action based on the claims contained in her EEOC charge only upon receipt of a right-to-sue letter. *Puryear v. County of Roanoke*, 214 F.3d 514, 518 (4th Cir. 2000) (citing 42 U.S.C. § 2000e-5(f)(1)). A plaintiff's failure to exhaust her administrative remedies divests the federal court of subject-matter jurisdiction over the claim. *Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 138-40 (4th Cir. 1995).

"The scope of the plaintiff's right to file a federal lawsuit is determined by the ... contents" of the charge submitted to the EEOC. *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Specifically, "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996). This requirement ensures that the claimant's "employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell Inc.*, 429 F.3d 480, 491 (4th Cir. 2005). Consistent with the foregoing, "a claim in formal litigation will generally be barred if the EEOC charge alleges

discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Jones*, 551 F.3d at 300.

Here, the EEOC Charge refers to retaliation based on disability. *See* ECF No. 33 at 13 ("I believe I have been retaliated against for refusing to provide a false statement against an individual who filed with the EEOC [a charge of age and disability discrimination] in violation of the Americans with Disabilities of 1990, as amended, Section 503."). However, nowhere does this or any other document, particularly the right-to-sue letter, mention a race-based retaliation claim, with the exception of certain allegations contained in the Amended Complaint. *See id.* at 2 ("The Plaintiff, Evans (African American) was employed by Larchmont Baptist Church Infant Care Center, Inc., September 2006 as a full-time Lead Teacher, in the Infant Room. On July 8, 2009, a co-worker was terminated by Defendant Carmi, (White) who was employed by Defendant (Larchmont) as Director, for allegedly sleeping on the job."), 3 ("Two staff members (white) complied and wrote statements against terminated co-worker (African American)."), 4 ("The Plaintiff believes she has established a *prima facie* case of retaliation under the Employment Discrimination Statu[t]e Civil Right[s] Act of 1964 (Title VII) Anti-retaliation provision."). Moreover, the race-based retaliation claim is neither reasonably related to the disability-based retaliation claim, nor would a reasonable investigation into the latter claim put Larchmont on notice of Evans's former claim. *See Jones*, 551 F.3d at 300; *Evans*, 80 F.3d at 963.

On April 4, 2013, the Court ordered Evans to show cause why it should not construe the Amended Complaint as asserting only a claim for retaliation under the ADA. Evans timely responded and moved to dismiss with prejudice her race-based retaliation claim. ECF No. 76 at 3 ("The Plaintiff hereby respectfully request[s] the Court to construe the Plaintiff's Amended Complaint as asserting only a claim for retaliation under the ADA and to proceed solely on the

disability-based retaliation claim in disposing of the Plaintiff's Motion for Default Judgment. The Plaintiff also respectfully request[s] that the race-based retaliation claim be dismissed with prejudice."). Accordingly, the Court finds that Evans failed to exhaust her administrative remedies with respect to her race-based retaliation claim under Title VII, and this claim as alleged in the Amended Complaint is **DISMISSED WITH PREJUDICE**. The Court proceeds solely on the retaliation claim under the ADA in disposing of Evans's Motion for Default Judgment.

### C. Merits

Section 503 of the ADA prohibits retaliation against an employee "because [that] individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing [thereunder]." 42 U.S.C. § 12203(a). "By its plain language, this provision of the ADA does not require as a predicate that the person invoking it be a qualified individual with a disability." *Parkinson v. Anne Arundel Med. Ctr., Inc.*, 214 F. Supp. 2d 511, 517 (D. Md. 2002) (citing *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001)). In assessing a retaliation claim under the ADA, the Court generally follows a three-part, burden-shifting analysis. *See id.*; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). However, as this case is proceeding on a motion for default judgment, Evans need only make out a *prima facie* case of retaliation because any burden that would shift to Larchmont could not be overcome. To establish a retaliation claim under the ADA, Evans must allege "(1) that she has engaged in conduct protected by the ADA; (2) that she suffered an adverse action subsequent to engaging in protected conduct; and (3) that there was a causal link between the protected activity and the adverse action." *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 216 (4th Cir. 2002) (citation omitted).

As an initial matter, Evans is not invoking the ADA as a qualified individual with a disability; rather, she is asserting a claim of retaliation under the ADA after she assisted a former co-worker, who was terminated, in that co-worker's disability discrimination charge. This action is a protected activity under the ADA. *See Mansfield v. Holder*, No. 09-cv-5718, 2012 WL 406432, at *19 (E.D. Pa. Feb. 9, 2012) ("Protected activity includes ... making a charge, testifying, *assisting, or participating* in any manner in an investigation, proceeding, or hearing pursuant to the Act.") (citations omitted) (emphasis added); *Carroll v. N.C. Dep't of Health & Human Servs.*, No. 4:00-CV-159-H(4), 2001 WL 34013436, at *4 (E.D.N.C. July 17, 2001) ("it is clear that the plaintiff engaged in protected activity by filing EEOC charges"). Evans alleges that she informed the EEOC on August 3, 2009, that her co-worker had been wrongfully terminated, that Carmi "forced/requested [] staff [] to complete a survey ... and submit statements that [her co-worker] was sleeping on the job," and that there had been no formal discussions at Larchmont regarding sleeping on the job. ECF No. 33, attach. 4. As a result of this activity, approximately four days later, on August 7, 2009, Evans suffered adverse employment action by being demoted, having her weekly work hours reduced, and receiving written reprimands, which she had not previously received. *See Boone v. Goldin*, 178 F.3d 253, 255 (4th Cir. 1999) (finding that allegations of "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion [are] the typical requirements for a showing of an 'adverse employment action'"). In light of the close temporal proximity of four days between when Evans engaged in protected activity and when Larchmont retaliated against her for this activity, the causal connection between these two actions has been established. *See Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994) ("The court found a causal connection between a plaintiff's protected activity and her discharge where the employer, with knowledge of a pending

discrimination complaint, fired plaintiff approximately four months after the complaint was filed.") (citation omitted); *Griffith v. Wal-Mart Stores East, L.P.*, No. 6:12-CV-00011, 2012 WL 5465501, at *10 (W.D. Va. Aug. 24, 2012) (finding causal connection between filing EEOC charge and termination ten days later); *Koger v. Woody*, No. 3:09cv90, 2010 WL 331759, at *15 (E.D. Va. Jan. 26, 2010) (finding causal connection between filing EEOC charge and termination three days later). Accordingly, Evans has stated a valid claim of retaliation under Section 503 of the ADA against Larchmont.

### D. Damages

Upon a plaintiff's motion for default judgment, a court may not award damages that exceed the amount sought in the pleadings. FED. R. CIV. P. 54(c). Also, "[u]nlike factual allegations as to liability, the Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations." *Mink v. Baltimore Behavioral Health Inc.*, No. WDQ-11-1937, 2012 WL 6043796, at *2 (D. Md. Dec. 4, 2012) (citation omitted). Although the Court may conduct an evidentiary hearing pursuant to Federal Rule of Civil Procedure 55(b)(2)(B), it has not done so here. Instead, on December 14, 2012, the Court informed Evans that it would make a determination of damages based on "an adequate evidentiary basis in the record for the award," ECF No. 74 at 1-2 (quoting *Mink*, 2012 WL 6043796, at *2), notified her that the record in this case was inadequate as to damages, and ordered her to file detailed affidavits or documentary evidence supporting her $80,000.00 claim for lost wages, *see Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D. D.C. 2001). On this point, Evans submitted a brief in support of her damages claim and attached thereto her 2008, 2009, and 2010

W-2 Wage and Tax Statements and eleven pay stubs from July 1 to November 17, 2009,[5] representing her earnings during her employ with Larchmont.[6] ECF No. 74. She specifically claims $80,000.00 in damages, representing $9,892.00 in "[l]os[t] earnings from Virginia Employment Commission," an unspecified amount in "[d]ecreased wages in 2009 after filing Charges," $11,725.00 in "[l]os[t] earnings from the year 2010," $43,000.00 in "[f]uture earnings," and $16,000.00 in "punitive damages due to mental distress and financial hardship."[7] *Id.* at 3. The Court will take each claim in turn and determine whether there is an adequate evidentiary basis in the record for an $80,000.00 award.

### i. Back Pay

First, Evans requests an unspecified amount in lost wages or back pay from 2009. "In cases brought pursuant to [the ADA], lost wages in the form of 'back pay' are generally available to a prevailing employee, which includes those wages that would have accrued to the time when the court might reinstate the employee."[8] *Coles v. Deltaville Boatyard, LLC*, No. 3:10cv491-DWD, 2011 WL 4804871, at *8 (E.D. Va. Oct. 11, 2011) (citation omitted). "Such 'back pay' is 'a make-whole remedy that resembles compensatory damages in some respects.'" *Id.* (citation omitted). The Court uses August 7, 2009, the date Evans was reassigned to the Toddler II Room as an Assistant Teacher, as the starting point in calculating these damages because it was after this date that Larchmont began to retaliate against Evans by reducing her weekly work hours below

---

[5] The following pay stubs are missing and will not be included in the Court's damages calculation: August 5 to 18, August 26 to September 1, September 16 to 22, September 30 to October 13, and October 21 to November 10, 2009.

[6] The Court notes that many of the documents Evans has submitted for filing in this case contain her personal identifiers in violation of Federal Rule of Civil Procedure 5.2(a) and Local Civil Rule 7(C). However, she has waived the protection of Rule 5.2(a) as to her own information by filing it without redaction and not under seal. *See* FED. R. CIV. P. 5.2(h). Simply put, it is the parties' obligation, not the Court's, to ensure that filings comply with these Rules.

[7] The Court acknowledges that these figures when added together exceed the $80,000.00 request for damages by $617.00, but this fact is not important given Evans's actual damages award.

[8] "The ADA borrows remedies from Title VII for retaliation claims in the employment context. *See* 42 U.S.C. §§ 12203, 12117, 2000e-5. The Court's discussion of back pay[, front pay, and punitive damages] in Title VII actions ..., then, is directly applicable to this case." *Rhoads v. F.D.I.C.*, 286 F. Supp. 2d 532, 537 n.2 (D. Md. 2003).

forty hours per week. For this reason, Evans's pay stubs from July 1 to August 4, 2009, are not included in the Court's damages calculation because they concern dates before the retaliation began. After reviewing the remaining pay stubs, the Court awards Evans $721.25.[9] *See* ECF No. 39, attach. 1 at 38-39. Although Evans also submitted her 2009 W-2 Wage and Tax Statement, ECF No. 74, attach. 7, the Court declines to use this document as the basis for an award of back pay because it does not set forth how many hours she worked each week before and after the retaliation began. This document, moreover, shows Evans earned a greater wage in 2009 ($21,571.37), when she was retaliated against, than in 2008 ($20,541.98), when there were no claims of retaliation. *Id.*, attach. 1. Without additional evidence to support Evans's claim that she worked less than forty hours each week after August 7, 2009, the Court's award of lost wages or back pay from 2009 is restricted to $721.25, an amount calculated from those pay stubs that Evans submitted and Exhibit A to Larchmont's brief in support of its motion for summary judgment.

*ii. Front Pay*

Evans also requests future lost earnings from 2010 in the amount of $11,725.00, representing what she should have earned that year had she not been terminated on June 3, 2010, and future lost earnings in the amount of $43,000.00. "The equitable remedy of front pay is generally available when an employer has terminated an employee unlawfully and the employee's reinstatement is not possible," as in this case because Larchmont is a defunct corporation.

---

[9] The Court arrived at this figure after making the following calculations: $42.56 for August 19 to 25, 2009 (40 hours/week - 35.52 hours worked x $9.50/hour), $75.62 for September 2 to 8, 2009 (40 hours/week - 32.04 hours worked x $9.50/hour), $111.91 for September 9 to 15, 2009 (40 hours/week - 28.22 hours worked x $9.50/hour), $75.34 for September 23 to 29, 2009 (40 hours/week - 32.07 hours worked x $9.50/hour rounded up to the nearest penny), $121.79 for October 14 to 20, 2009 (40 hours/week - 27.18 hours worked x $9.50/hour), $151.53 for November 11 to 17, 2009 (40 hours/week - 24.05 hours worked x $9.50/hour rounded up to the nearest penny), $28.50 for the December 8, 2009 pay period (40 hours/week – 37 hours worked x $9.50/hour), $28.50 for the December 15, 2009 pay period (40 hours/week – 37 hours worked x $9.50/hour), $28.50 for the December 22, 2009 pay period (40 hours/week – 37 hours worked x $9.50/hour), and $57.00 for the December 29, 2009 pay period (40 hours/week – 34 hours worked x $9.50/hour).

*Loveless v. John's Ford, Inc.*, 232 F. App'x 229, 238 (4th Cir. 2007) (unpublished *per curiam* decision) (citation omitted). "Front pay is designed to place a plaintiff in the financial position [s]he would have been in had [s]he been reinstated," *id.* (citation omitted), but such an award should "be granted sparingly" because it could "result in an unfair windfall," *Ford v. Rigidply Rafters, Inc.*, 984 F. Supp. 386, 392 (D. Md. 1997) (citation omitted). "[T]he Court may exercise its discretion to award 'front pay,' which includes those future earnings lost as a result of the statutory violation." *Coles*, 2011 WL 4804871, at *8 (citation omitted). Although "[t]he Fourth Circuit has not specifically enumerated a list of factors to consider in deciding to award front pay[,] [o]ther courts have considered the plaintiff's prospect of obtaining comparable employment; the time period of the award; whether the plaintiff intended to work; and whether liquidated damages have been awarded." *Ford*, 984 F. Supp. at 392 (citing *Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1141 (7th Cir. 1994)). "Because front pay necessarily involves speculation as to future events, the Court must judiciously scrutinize the record to determine whether future events are sufficiently predictable to justify such an award." *Id.*

As an initial matter, the Court declines to award both $11,725.00 and $43,000.00 in damages as they concern Evans's lost future earnings and to award both would permit double recovery amounting in a windfall. *See Shiroma v. Gov't of Guam*, No. 05-00020, 2005 WL 3484180, at *2 n.3 (D. Guam Dec. 9, 2005) ("However, the Court also recognizes that Title VII prohibits the plaintiff from receiving double recovery.") (citation omitted). In reviewing the record, however, the Court finds there is no argument or evidence as to the prospect of Evans obtaining comparable employment, whether other work opportunities are reasonably available, or whether she has been actively and diligently looking for employment, which would suggest a desire or intent to return to work. Moreover, no liquidated damages have been awarded. The only

14

argument Evans asserts to support her claim for front pay is the bare statement that since her termination in June 2010 she has been unemployed. ECF No. 74 at 2 ("Plaintiff has been unemployed from June, 2010 until the present time which has ... impacted on the Plaintiff's future earnings."). A finding by this Court as to the reasonable expected time for Evans to obtain comparable employment, that other work opportunities are reasonably available, or that she has been actively and diligently look for employment would be unduly speculative and inappropriate. Even Evans's $43,000.00 claim in lost future earnings is equally speculative because she does not reveal the source of this figure. To award Evans front pay based on the record in this case would require this Court to assume certain unknowns. *Bruso v. United Airlines, Inc.*, 239 F.3d 848, 862 (7th Cir. 2001) (stating that a district court does not abuse its discretion in denying a request for front pay if the plaintiff fails to provide "the essential data necessary to calculate a reasonably certain front pay award") (internal quotation omitted). This cannot and should not be done in light of the Court's duty to award only those damages with an adequate evidentiary basis. *See McInerney v. United Air Lines, Inc.*, 463 F. App'x 709, 725-26 (10th Cir. 2011) (unpublished decision) ("We conclude that the district court did not abuse its discretion in denying front pay because McInerney's attempt to calculate front pay at the hearing was inadequate. The record contains no reference to any attempt on her part to address life expectancy, continued term of employed with United, or a viable discount rate that would have supported a calculable front pay amount.") (citation omitted). Accordingly, the Court does not award Evans front pay or lost future earnings.

### iii. Compensatory and Punitive Damages

Evans also requests $16,000.00 in punitive damages for "mental distress and financial hardship." ECF No. 74 at 3. By alleging emotional distress and financial hardship, however,

Evans is, in reality, requesting compensatory, not punitive, damages.[10] To the extent she is claiming compensatory damages for financial hardship, this claim is similar to, but stated in different terms than, her economic loss claim for front and back pay, which the Court disposed of *supra*. Therefore, the Court will not award Evans compensatory damages for financial hardship.

Notwithstanding, courts have grappled with the question of whether compensatory and punitive damages may even be awarded for retaliation-based claims under the ADA. *Rhoads v. F.D.I.C.*, 94 F. App'x 187, 188 (4th Cir. 2004) ("Rhoads' claim that she was entitled to recover compensatory and punitive damages in her trial for violation of the ADA's anti-retaliation provision fails because such relief is unavailable.") (citing *Kramer v. Banc of Am. Sec., LLC*, 455 F.3d 961, 965 (7th Cir. 2004)) (unpublished *per curiam* decision); *Beasley v. Consolidation Coal Co.*, No. 1:11CV00055, 2012 WL 2798805, at *9 (W.D. Va. June 13, 2012) ("In his ADA claim, Beasley alleges that Consol's retaliation caused him to suffer personal and emotional damages, loss, and other compensatory damages, as well as lost wages and benefits. He also alleges that Consol's violations warrant an award of punitive damages. However, compensatory and punitive damages are not allowable for ADA retaliation claims.") (citation omitted). *But see Lucas v. Henrico County Sch. Bd.*, 822 F. Supp. 2d 589, 613 n.20 (E.D. Va. Sept. 30, 2011) ("Defendants also argue that compensatory and punitive damages, as well as a jury trial, are unavailable for Lucas's ADA retaliation claim in Count 1. While Defendants cite to an unpublished Fourth Circuit opinion to support this proposition, Defendants fail to address published district court cases in this circuit and other circuit court opinions which hold otherwise.") (citation omitted).

---

[10] The Court notes that Evans only requests damages for lost wages in the Amended Complaint. The first time she raises a compensatory damage claim for emotional distress and punitive damages is in a supplemental filing with the Court. *See* ECF No. 74. "For the sake of completeness, and because [Evans] is proceeding *pro se*, however, the undersigned ... has considered the information related to damages provided in [Evan's] Motion for Default Judgment and the accompanying Memorandum in Support." *Cumberlander v. KCL Site Servs., LLC*, No. 08-994, 2009 WL 4927144, at *10 (E.D. Va. Dec. 17, 2009).

Although this question is disputed in this Circuit, *see U.S. E.E.O.C. v. Rite Aid Corp.*, 750 F. Supp. 2d 564, 571 n.5 (D. Md. 2010) ("The defendant also contends that compensatory and punitive damages are not available for anti-retaliation claims under the ADA. This is a disputed question that does not need to be addressed prior to trial.") (citation omitted), even if such damages are available for this type of claim, the Court finds that they are unwarranted here.

As to Evans's claim of compensatory damages for emotional distress,

> a plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress. *Price v. City of Charlotte*, 93 F.3d 1241, 1251 (4th Cir. 1996). Such testimony must "establish that the plaintiff suffered demonstrable emotional distress, which must be sufficiently articulated." *Id.* The testimony cannot rely on "conclusory statements that the plaintiff suffered emotional distress" or the mere fact that the plaintiff was wronged. *Id.* Rather, it must indicate with specificity "how [the plaintiff's] alleged distress manifested itself." *Id.* The plaintiff must also "show a causal connection between the violation and her emotional distress." *Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639, 653 (4th Cir. 2002).

*Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 546-57 (4th Cir. 2003). The only arguments Evans asserts to support her claim of emotional distress are two conclusory statements that a memorandum was posted in the workplace on August 12, 2009, "reflecting [her] demotion and reassignment ..., which caused [her] emotional stress," ECF No. 33 at 3, and that she "has been unemployed from June, 2010 until the present time which has caused mental distress," ECF No. 74 at 2. These statements, standing alone, cannot support an award of compensatory damages for emotional distress. Specifically, they do not sufficiently articulate the demonstrable emotional distress Evans suffered, specify how this distress manifested itself, and establish a causal connection between Larchmont's ADA violation and this distress. *See Jones v. Billy Excavation & Equip. Corp.*, No. 1:09CV0048, 2010 WL 988480, at *4 (W.D. Va. Mar. 15, 2010) (awarding $5,000.00 for mental anguish and emotional distress where plaintiff produced evidence that

defendant's employee's abuse caused him to feel belittled and humiliated; plaintiff was diagnosed with and treated for post-traumatic stress disorder as a result of abuse). Therefore, the Court will not award Evans compensatory damages for emotional distress.

To the extent Evans is claiming punitive damages, she must "'demonstrate[] that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federal protected rights of an aggrieved individual." *Keeshan v. Eau Claire Coop. Health Ctrs., Inc.*, 394 F. App'x 987, 994 (4th Cir. 2010) (unpublished *per curiam* decision) (citation omitted). "This standard requires the plaintiff to show that the employer 'discriminate[d] in the face of a perceived risk that its actions will violate federal law.'" *Id.* (quoting *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999)). The only arguments Evans asserts to support her claim for punitive damages are two conclusory statements that Larchmont subjected her "to deliberate and malic[ious] retaliation for failure to write a false statement," ECF No. 33 at 4, and that she "was intentionally and with malice retaliated against," *id.* at 5. These conclusory statements, standing alone, cannot support an award of punitive damages because they do not allege sufficient factual matter to permit the reasonable inference that Larchmont engaged in intentional retaliation with malice or reckless indifference to Evans's federally protected rights. *See Cumberlander v. KCL Site Servs., LLC*, No. 08-994, 2009 WL 4927144, at *10 (E.D. Va. Dec. 17, 2009) ("At most, plaintiff conclusively states that defendant willfully conspired against him by covering up the wages on the wage scale, but does not support this conclusion with any factual allegations tending to show that he is entitled to punitive damages because defendant acted with malice or reckless indifference."). Therefore, the Court will not award Evans punitive damages.

Even absent the above analysis, because Evans failed to make a specific request for punitive damages and compensatory damages for emotional distress in the Amended Complaint—

she only sought "damages for los[t] wages," ECF No. 33 at 5—she is not entitled to such relief. *See Cumberlander*, 2009 WL 4927144, at *10 ("'When the judgment entered is a default judgment, the pleadings control the relief that may be awarded, both as to the kind of relief and its scope.' The rationale being, 'if relief were granted without proper notice to the defendant, substantial questions of due process would be raised.'") (citation omitted).

### iv. Workers' Compensation

Finally, Evans requests lost earnings from the denial of her claim for state unemployment benefits with the Virginia Employment Commission. Such a claim, however, is barred by the *Rooker-Feldman* doctrine, which "bars 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Washington v. Wilmore*, 407 F.3d 274, 279 (4th Cir. 2005) (quoting *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284 (2005)); *see Patterson v. Goudelock*, No. 3:10-3019-MBS, 2011 WL 2672566, at *2 (D. S.C. June 30, 2011) ("The gravamen of Plaintiff's complaint is that she wrongfully was denied workers' compensation benefits. The court concludes that Plaintiff's allegations 'invit[e the] district court [to] review and reject[]' the decisions made at the workers' compensation proceedings. The court thus lacks subject matter over Plaintiff's ... claims."). Regardless if Evans sought state administrative and judicial review of the Virginia Employment Commission's decision, "[a]llowing [her state] claim [for unemployment benefits] to proceed against [Larchmont] would permit her to use the federal courts to [effectively] appeal a State [decision] and, thus, run afoul of the *Rooker-Feldman* doctrine." *Lorah v. Home Helper's Inc. Del. Respite*, 813 F. Supp. 2d 620, 626 (D. Del. 2011) (citations omitted). This she may not do, and the Court does not award Evans damages based on a denial of her state unemployment benefits claim.

## IV. CONCLUSION

For these reasons, the Court **ORDERS** the following:

1. The Plaintiff's claim of retaliation under Title VII as alleged in the Amended Complaint is **DISMISSED WITH PREJUDICE.**

2. The Plaintiff's Motion for Default Judgment, ECF No. 72, as to her claim of retaliation under the ADA is **GRANTED IN PART**, and the Clerk is **DIRECTED** to enter judgment in the amount of $721.25 for the Plaintiff only against the Defendant, Larchmont Baptist Church Infant Care Center, Inc. Although the Plaintiff has also moved for default judgment against Laura Reed and Kim Carmi, that part of the Motion, ECF No. 72, is **DENIED** because Reed and Carmi were both dismissed with prejudice as defendants in this case, *see* ECF No. 35.

3. Kim Carmi's Motions, ECF Nos. 70-71, are **DENIED as MOOT.**

The Clerk is further **DIRECTED** to forward a copy of this Opinion and Final Order to the parties and Kim Carmi.

It is so **ORDERED**.

/s/ Lawrence R. Leonard
Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
July 8, 2013

20